## HOFFMAN v. ILLINOIS NAT. CASUALTY CO.

### No. 9119.

Circuit Court of Appeals, Seventh Circuit.
Jan. 25, 1947.

George F. Stevens, of Plymouth, Ind., for appellant.

Harry E. Vernon, of Goshen, Ind., for appellee.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

On April 16, 1943, one Quincy Brown was struck and killed by a tractor owned by plaintiff. Thereafter the administratrix of the estate of Quincy Brown, deceased, sued plaintiff for the recovery of damages for the wrongful death of her decedent. The defendant in this case, Illinois Casualty Company of Springfield, Illinois, was duly notified of the accident and of the filing of the cause of action against plaintiff, but it denied any and all liability and refused to defend the case. The cause for the wrongful death of Brown proceeded to trial in a competent court of record, and the administratrix recovered a judgment against plaintiff for $5,000. To recover his costs and the amount of the judgment, plaintiff sued the Casualty Company. The case was tried by the court without a jury and resulted in a judgment in favor of plaintiff. Defendant appealed.

The controlling facts are not in dispute. These facts are that defendant issued to plaintiff its policy, effective March 20, 1943, insuring plaintiff against liability for bodily injury including death, sustained by any person, caused by an accident and arising out of the ownership and use of a Ford tractor, motor No.99T291330. This tractor was used by plaintiff in his business of making daily trips with livestock to Chicago, Illinois, and on April 1, 1943, it was involved in an accident. While the tractor was not completely wrecked, it was not thereafter used or operated by plaintiff. Defendant was notified of the accident and a claim for the damage was made by plaintiff under the policy. On April 9, 1943, while the claim was pending, plaintiff purchased another Ford tractor, motor No. 99T384068, and thereafter used this tractor in his business of hauling livestock. On April 12, 1943, the claim for damage to the first tractor was settled. At the time of the

settlement plaintiff said nothing about having purchased the second tractor, but he did tell defendant's adjuster that he did not know whether he wanted to repair the damaged tractor or trade it in on a new one. April 16, 1943, the second tractor, while being operated by plaintiff's agent, was involved in an accident in which Brown was killed.

The issue in this appeal involves an interpretation of the policy, and the ultimate question is whether, under the facts, the policy covered plaintiff's liability for the wrongful death of Brown.

Before discussing the provisions of the policy it is well to recall that the courts, rather uniformly and generally, have laid down the rule that insurance contracts must be construed liberally to the insured and should receive an interpretation consistent with the apparent object and plain intent of the parties, and that when a policy contains provisions reasonably subject to different constructions, one favorable to the insurer and one favorable to the insured, the construction favorable to the insured should prevail.

Defendant contends that the policy insured plaintiff only against the liability imposed by loss arising or resulting from claims made upon him by reason of the use and operation of the tractor described in the policy.

Of course, in the absence of a replacement provision in an automobile liability policy, the policy will not cover liability for an injury caused by an automobile other than the one described in the policy, but in our case the policy provided: "II. Automatic Insurance for Newly acquired Automobiles. If the Named Insured * * * acquires * * * another automobile, such insurance as is afforded by this Policy applies also to such other automobile as of the date of its delivery to him; (a) if it replaces an automobile described in this Policy, and if it may be classified for the purposes of use stated in the Declarations, but only to the extent the insurance is applicable to the replaced automobile, * * *. The insurance afforded by this Policy terminates upon the replaced automobile at the date of such delivery. The provisions

of this paragraph do not apply * * * unless the Named Insured notifies the Company within 30 days following the date of delivery of such other automobile, * * *."

In arguing for a reversal, defendant points to the fact that no notice of the purchase of the second tractor was given to defendant before the accident resulting in the death of Brown, and insists that plaintiff did not intend the second tractor to replace the first tractor, and that even if he did, before it could be said that the policy covered the second tractor, it was incumbent upon plaintiff to notify defendant of the purchase of the second tractor and request that the insurance be transferred to the second tractor (although plaintiff's son testified that on April 11 or 13, 1943, he called defendant's agent and notified him of the purchase of the second tractor and requested a transfer to cover the new tractor). Defendant rests its contention upon Mitcham v. Travelers Indemnity Co., 4 Cir., 127 F.2d 27; Continental Casualty Co. v. Trenner, D.C., 35 F.Supp. 643; and Jamison v. Phoenix Indemnity Co., D.C., 40 F. Supp. 87. We have examined these cases and believe they afford no aid to defendant.

The Mitcham case is distinguishable upon the facts. In that case the court found that the Lincoln Zephyr did not in fact replace the Buick car. Gray still had full control over it and he could have put it into use. In the Trenner case, the replaced automobile was involved in an accident after the time limit in the policy. True, the policy in the Jamison case did contain a replacement provision similar to the one in the instant case and no notice or request for the transfer of the insurance was given to the insurer. Even so, we think the correct interpretation of the policy may be found in the cases presently to be noted.

The provision for automatic insurance for a newly acquired automobile is expressed in the broadest terms and is for the benefit of the insured; it provides him with coverage whenever he acquires ownership of another automobile as of the date of its delivery to him if the newly acquired automobile replaces an automobile described in the policy and may be classified for the purposes of use stated in the policy, and expressly provides that the insurance afforded by the policy terminates upon the replaced automobile on the date of the delivery of the newly acquired automobile.

We have already observed that plaintiff's first tractor was used in his business of hauling livestock; that after the accident of April 1 this tractor was not again used or operated by plaintiff; and that plaintiff, for the purpose of hauling his livestock, acquired the second tractor. Since the language of the policy is to be construed in accordance with the principle that the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would have understood them to mean, it is clear that when the first tractor was wrecked and the second tractor was acquired and used in its place, a reasonable person in such a situation, from the language used, would have reasonably assumed that all coverage with respect to the first tractor was terminated and that the policy, without notice, was automatically transferred as of the date of the delivery of the second tractor for a period of 30 days to the newly acquired tractor. Support for our conclusion is found in Merchants Mutual Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483; Union Automobile Indemnity Ass'n v. Reimann, Mo.App., 171 S.W.2d 721, 723; and Thompson v. State Automobile Mutual Ins. Co., 122 W.Va. 551, 11 S.E.2d 849, and since the accident in which the second tractor, or newly acquired automobile, was involved within the 30 days of its delivery to plaintiff, we think the District Court correctly entered judgment for plaintiff.

Affirmed.