234 F.2d 916
 The WESTERN CASUALTY & SURETY COMPANY, a corporation, Appellant,
v.
Billy Fred LUND, Halliburton Oil Well Cementing Company, Donald Herbert Sprague and The Standard Insurance Company of Tulsa, Oklahoma, Appellees.
 No. 5297.
 United States Court of Appeals Tenth Circuit.
 July 13, 1956.
 
 Robert D. Looney, Oklahoma City, Okl. (Looney, Watts, Looney, Welch, Hamill & Nichols, Oklahoma City, Okl., were with him on the brief), for appellant.
 Bill Logan, W. W. Godlove, Jack Cummins, and Jack Brock, Lawton, Okl., were on the brief for appellee Lund.
 Clayton B. Pierce, Oklahoma City, Okl. (Paul C. Duncan, Calvin W. Hendrickson, and Pierce, Mock & Duncan, Oklahoma City, Okl., were with him on the brief), for appellee Halliburton Oil Well Cementing Co.
 B. W. Tabor, Tulsa, Okl. (Rucker, Tabor & Cox, and Joseph A. Sharp, Tulsa, Okl., were with him on the brief), for appellee The Standard Ins. Co.
 Before BRATTON, Chief Judge, PHILLIPS, Circuit Judge, and ROGERS, District Judge.
 BRATTON, Chief Judge.
 
 
 1
 The Western Casualty & Surety Company, hereinafter referred to as Western, instituted this action against Donald Herbert Sprague, hereinafter referred to as Sprague, Halliburton Oil Well Cementing Company, hereinafter referred to as Halliburton, and Billy Fred Lund, hereinafter referred to as Lund, for a declaratory judgment determining the rights and obligations of the parties in respect to a certain policy of automobile liability insurance issued by Western. The Standard Insurance Company, hereinafter referred to as Standard, later became a party defendant. These facts were established at the trial. Sprague was an employee of Halliburton. On January 17, 1954, Sprague purchased a DeSoto automobile in Duncan, Oklahoma; and on the same day, Duncan Finance Company purchased the note given in payment for the automobile. L. A. Edwards, hereinafter referred to as Edwards, was a co-partner in the ownership and management of the finance company; and Edwards was also local agent at Duncan for Standard. Acting through Edwards as its local agent, Standard issued to Sprague its policy of automobile insurance covering liability arising out of the operation of the DeSoto automobile. The limits of liability in the policy were $5,000 for each person, $10,000 for each accident, and $5,000 for property damage for each accident. The policy was not delivered to Sprague. It was retained in the files of the finance company. On February 15, 1954, Sprague applied to Edwards for insurance coverage with limits of $50,000 for each person, and $100,000 for each accident. Edwards immediately wrote a letter addressed "To Whom It May Concern" in which it was stated that the coverage of the policy issued to Sprague was being increased to $50,000 and $100,000, respectively; and he gave the letter to Sprague for delivery to Halliburton. Sometime after Sprague left with the letter, Edwards recalled or realized that Sprague was under 25 years of age and that it was not the policy of Standard to issue policies of the enlarged amounts stated in the letter to persons under that age. R. K. Arnold, hereinafter referred to as Arnold, was the agent of Western in Duncan. The next morning after Sprague left with the letter stating that the Standard policy had been increased in amounts, Edwards requested Arnold to issue and mail to Edwards a policy covering Sprague's liability arising out of the operation of the DeSoto automobile with limits of $50,000 for each person, $100,000 for each accident, and $5,000 for property damage for each accident. Arnold issued and mailed to Edwards the policy of Western, dated February 16, 1954. By letter dated February 16, 1954, Edwards advised Sprague that the Standard policy was being cancelled, effective that day; that Arnold was writing Sprague a policy with limits of $50,000 and $100,000; and that the reason for such action was that Standard did not desire to insure persons under 25 years of age for such higher limits. On February 16 or 17, Sprague traded the DeSoto for a Ford; and later he traded the Ford for an Oldsmobile. On February 17, Edwards received from Arnold the Western policy. On the same day, Edwards understood that the DeSoto had been repossessed, and he thereupon returned the Western policy to Arnold and requested that it be canceled flat. Arnold ran through a flat cancellation of the Western policy and returned such policy to Western. On March 8, 1954, the Oldsmobile was involved in an accident. Lund sued Sprague and Halliburton in the state court for damages arising out of the accident. Demand was made upon Western to defend on behalf of Sprague and Halliburton the action in the state court and to pay within the limits of the policy any judgment recovered against them. The court, in this proceeding for a declaratory judgment, determined that at the time of the accident the policy issued by Standard was effectively canceled; that Standard bore no liability in connection with the accident; and that the policy issued by Western was in effect. Judgment was entered accordingly and Western appealed.
 
 
 2
 The first contention urged for reversal of the judgment is that the policy issued by Western was never delivered to Sprague and never became effective. Edwards acted as agent or broker for Sprague in obtaining such policy. And the delivery of the policy to Edwards constituted delivery to Sprague. Tarleton v. De Veuve, 9 Cir., 113 F.2d 290, 132 A.L.R. 343, certiorari denied 312 U.S. 691, 61 S.Ct. 710, 85 L.Ed. 1127. The premium was not paid upon delivery of the policy to Edwards. But Edwards had from time to time obtained policies of insurance from Arnold, and it was their custom and practice for Arnold to submit monthly statements covering the premiums on such policies and for the finance company to make payment according to such statements. In the issuance and delivery of the policy in question, Arnold looked to the finance company for payment of the premium in accordance with such custom and practice. Edwards expected the finance company to make payment upon receipt of the monthly statement. And where credit is extended for the premium on a policy of insurance in accordance with a prevailing usage and custom, the policy becomes effective upon its delivery. Miller v. Life Insurance Co., 12 Wall. 285, 20 L.Ed. 398; Insurance Co. v. Colt, 20 Wall. 560, 22 L.Ed. 423; Smith v. Provident Savings Life Assurance Society of New York, 6 Cir., 65 F. 765.
 
 
 3
 The further contention is in substance that Edwards had general authority to return the policy issued by Western, and that when he returned such policy to Arnold its coverage was effectively terminated. Edwards was not the general agent or broker of Sprague with power to procure insurance from time to time in order to keep Sprague continuously protected against liability arising out of the operation of the DeSoto. He was authorized to act as agent or broker for Sprague in obtaining a policy of insurance for the increased amounts, respectively. But he was not expressly authorized to cancel the insurance after it was issued. And express authority of an agent or broker to procure insurance does not of itself create implied authority to effectuate cancellation of the insurance after it has been obtained. Grace v. American Central Insurance Co., 109 U.S. 278, 3 S.Ct. 207, 27 L.Ed. 932; Spann v. Commercial Standard Insurance Co. of Dallas, Texas, 8 Cir., 82 F.2d 593; Hermann v. Niagara Fire Insurance Co., 100 N.Y. 411, 3 N.E. 341; Michelson v. Franklin Fire Insurance Co., 252 Mass. 336, 147 N.E. 851; Insurance Co. of North America v. Forcheimer, 86 Ala. 541, 5 So. 870; Urey v. Southern Fire Insurance Co., 197 N.C. 385, 148 S.E. 432; Waterloo Lumber Co. v. Des Moines Insurance Co., 158 Iowa 563, 138 N.W. 504, 51 L.R.A.,N.S., 539; Quong Tue Sing v. Anglo-Nevada Assurance Corp., 86 Cal. 566, 25 P. 58, 10 L.R.A. 144; Emery v. Pacific Employers Insurance Co., 8 Cal.2d 663, 67 P.2d 1046; Moser Manufacturing Co. v. Donegal & Conoy Mutual Fire Insurance Co., 362 Pa. 110, 66 A.2d 581.
 
 
 4
 Finally, the judgment is challenged upon the additional ground that since Sprague failed to notify Western of the substitutions of automobiles, the policy issued by Western did not protect him in respect to liability arising out of the operation or maintenance of the Oldsmobile involved in the accident upon which the suit instituted by Lund was predicated. By express provisions, the policy issued by Western protected Sprague in respect to liability arising out of the operation or maintenance of the DeSoto. But under the caption automatic insurance the policy provided in presently pertinent part:
 
 
 5
 "Except where stated to the contrary, the word `automobile' means: * * * Newly Acquired Automobile — an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date. * * *"
 
 
 6
 The provision was for the benefit of Sprague. Its purpose was to provide him automatic coverage in respect to the operation or maintenance of an automobile acquired as a replacement of the automobile described in the policy and also to preserve for Western the essentials of insurance. Home Mutual Insurance Co. of Iowa v. Rose, 8 Cir., 150 F.2d 201. Under the clear import of such a provision, the automatic coverage becomes effective immediately upon the replacement and continues for a period of thirty days. The giving of the notice is not a prerequisite to coverage during that period. If the notice is not given during the thirty-day period, the coverage terminates at the end of such period. But the automatic coverage protects the insured against liability accruing within that period even though no notice of the replacement be given. Hoffman v. Illinois National Casualty Co., 7 Cir., 159 F.2d 564; Merchants Mutual Casualty Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483; Birch v. Harbor Insurance Co., 126 Cal.App.2d 714, 272 P.2d 784; Melendez v. General Accident, Fire & Life Assurance Corp., 189 Misc. 392, 70 N.Y.S.2d 404, affirmed 273 App.Div. 960, 79 N.Y.S.2d 307, appeal denied 274 App. Div. 763, 80 N.Y.S.2d 725. The two successive replacements in question both occurred less than thirty days prior to the accident giving rise to the suit instituted by Lund and therefore the policy issued by Western was effective in respect to the liability of Sprague growing out of such accident.
 
 
 7
 The judgment is affirmed.